# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stavros Zafiratos,                 :
          Appellant          :
                               :    No. 121 C.D. 2016
           v.                      :
                               :    Submitted: January 6, 2017
Board of License and Inspection      :
Review                               :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: March 22, 2017

Stavros Zafiratos (Licensee) appeals from the December 17, 2015 order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the City of Philadelphia Board of License and Inspection Review's (Board) determination to affirm the decision of Philadelphia Department of Licenses and Inspections (L&I) to revoke Licensee's Center City Sidewalk Vending License (Vending License) for unlawfully transferring or assigning the same to another person.

**Facts and Procedural History**

Licensee was issued the Vending License to operate a sidewalk vending cart at a specifically assigned location on 16th Street, between John F. Kennedy Boulevard and Market Street, in Center City, Philadelphia. On October 17, 2014, L&I issued Licensee a 30-Day Notice of Order to Revoke the Vending License, alleging that he had unlawfully transferred or assigned the Vending License to Salim Khan (Khan) in violation of section 9-204(3)(f) of the Philadelphia Code (Code). Licensee appealed the revocation notice to the Board, arguing that his Vending License had not been transferred or assigned. The Board conducted a hearing on Licensee's appeal. (Board's Findings of Fact at Nos. 1-4).

At the hearing, Maureen Blaney, manager of L&I's vending unit, testified regarding the factors supporting L&I's determination that Licensee unlawfully transferred or assigned the Vending License to Khan, such as: the cart operating at Licensee's location was named "Salim's Quick Stop;" the Vending License has listed the relevant licensee's address as Khan's since 2003; and, in 2004, Licensee's city tax account was changed to Khan's address and Khan has paid taxes due on that account since that time. According to Blaney, L&I also considered that, upon inspection and prior to the issuance of the notice to revoke, the vending cart's license plate was registered to Khan; however, upon inspection after the issuance of notice to revoke, the vending cart had a New Jersey license plate registered to Licensee. Additionally, L&I found persuasive that Licensee did not have a commissary license, and that food facility inspection reports listed individuals other than Licensee as the "Person in Charge" from 2009 through 2013. (Board's Findings of Fact at Nos. 5-13.)

Licensee testified that the Vending License is in his name, that he owns the vending cart, and that he receives approximately five to six percent of the cart's proceeds each month in cash. Licensee acknowledged that he did not execute a contract with Khan, although he explained that he executed a power of attorney agreement with Khan, which he stated authorized Khan to handle Licensee's affairs with respect to the Vending License. Licensee further explained that Khan does not provide him with any paperwork indicating how much money the vending cart makes and noted that Khan buys all of the food for the cart and handles the W-2s and 1099s for the cart's employees. (Reproduced Record (R.R.) at 66-80.)

Khan testified that he receives between ninety and ninety-five percent of the vending cart's profits and explained that he pays the cart's employees. Khan stated that he possesses a business privilege license and pays the taxes on the same. He also stated that he pays the fees for Licensee's Vending License and uses his own address for annual license renewal, although he conceded that, under the Code, a license is supposed to be sent to the licensee and confirmed that he is not the licensee. Khan further testified that he possesses two Center City licenses in his name and that he also uses his address for his cousin's vending license, although he noted that his cousin does not live at his address. (R.R. at 84-90.)

After the hearing, the Board made the following factual findings: Khan handles all of the affairs relating to the vending cart; Licensee is not involved with operation of the vending cart and did not handle the associated paperwork; Khan does all of the buying and selling for the cart; Khan hires the accountant and gets all the paperwork done regarding the same, as well as paperwork relating to W-2s and 1099s issued to employees and pays the associated wage taxes; Khan gives Licensee approximately five to six percent of the income from the vending cart, but does not

3

provide any written records to Licensee; Khan pays the fees for the Vending License and his address is listed on annual license renewals; Khan hires the employees who work at the cart; and, with respect to the Vending License, Khan has been acting on his own behalf and not on behalf of Licensee. The Board also found that Khan is not Licensee's employee, nor is he Licensee's independent contractor. Moreover, the Board found that Licensee assigned or transferred the Vending License to Khan in violation of the Code and affirmed L&I's decision revoking the same. (Board's Findings of Fact at Nos. 15-22, 24-27; Board's Conclusions of Law at Nos. 6-7, 9.)

Licensee appealed the Board's determination to the trial court, which heard oral argument and subsequently affirmed the Board's decision. On January 15, 2016, Licensee appealed the trial court's order to this Court.

On appeal, Licensee argues that the Board erred because the record lacks substantial evidence demonstrating that he transferred or assigned the Vending License to Khan. According to Licensee, he executed a power of attorney agreement that authorized Khan to act as his agent with regard to the vending cart, which he maintains is consistent with the Code because the Code permits one person to hold two licenses, thereby indicating that a licensee must be allowed to hire employees, managers, and agents because one person cannot simultaneously operate two locations.

**Discussion**

"In a substantial evidence inquiry[,] we simply inquire whether there is such relevant evidence of record which a reasonable person might accept as adequate to support a conclusion." *Mulberry Market, Inc. v. City of Philadelphia, Board of License & Inspection Review*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999). Importantly,

4

"it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the factfinder, rather, the pertinent inquiry is whether there is any evidence which supports the factfinder's factual finding." *Id.* It is solely for the factfinder to assess credibility, resolve conflicts in evidence, and determine what weight to give evidence. *Id.* Moreover, we must view the evidence in the light most favorable to the prevailing party. *Philadelphia Civil Service Commission v. Ross*, 595 A.2d 200, 202 (Pa. Cmwlth. 1989).

Section 9-204(3) of the Code provides that "[i]t shall be unlawful for any person to engage in the business of a sidewalk vendor within Center City without first obtaining a license pursuant to this Section from the Department." Section 9-204(3)(f) of the Code provides that "[**e**]**very license shall be non-assignable and non-transferable**." (Emphasis added).

The sole issue Licensee raises on appeal is that the record lacks substantial evidence to support the Board's finding that Licensee transferred or assigned his license to Khan. According to Licensee, the Code does not prohibit a licensee from hiring an employee or agent to operate a vending cart and handle the administrative and daily operations of the same, which he maintains is precisely what occurred when he executed the power of attorney agreement with Khan. Licensee asserts that Khan was merely acting as his agent and there is no evidence that a transfer or assignment of the Vending License occurred.

First, we address Licensee's argument that a transfer or assignment did not occur because Khan was acting as his agent.

The three basic elements of an agency relationship are: (1) manifestation by a principal that an agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the parties' understanding that the principal is

5

to be in control of the undertaking. *Wilson Area School District v. Skepton*, 860 A.2d 625, 630 (Pa. Cmwlth. 2004). "The inquiry for actual agency focuses on the day-to-day control over the manner of the purported servant's performance; control is the hallmark of a master-servant relationship." *Clayton v. McCullough*, 670 A.2d 710, 714 (Pa. Super. 1996). "The existence of an agency relationship is a question of fact." *B & L Asphalt Industries, Inc. v. Fusco*, 753 A.2d 264, 269 (Pa. Super. 2000). The party asserting the existence of an agency relationship has the burden of establishing the same. *Wilson Area School District*, 860 A.2d at 630.

Here, although Licensee categorizes the written agreement he executed with Khan as an agency agreement, it is titled "Power of Attorney" and states:

> I, ZAFIRATOS STAVROS, OWNER OF VENDING FOOD CART OPERATING SINCE 1972 IN CENTER CITY, LICENSE# 310118 AND BUSINESS PRIVILEGE# 68565, PR[E]VIOUSLY LOCATED ON 5TH STREET BETWEEN MARKET AND CHESTNUT STREET EAST SIDE,[] AND NOW TEMPORARILY LOCATED ON 9TH STREET BETWEEN FILBERT AND MARKET STREET (EAST SIDE), DO HEREBY APPOINT AND AUTHORIZE MR. SALIM KHAN (465 EAST PENN AVE DREXEL HILL,[] PA 19026) IN MY NAME, PLACE AND STEAD IN ANY WAY WHICH I MYSELF COULD DO OR REQUIRED TO DO, WITH RESPECT TO ANY MATTER OF MY FOOD CART WITH THE LICENSE & INSPECTION DEPARTMENT AND HEALTH DEPARTMENT AS DEFINED IN GENERAL OBLIGATION LAW TO THE EXTENT THAT I AM PERMITTED BY LAW ACT THROUGH AN AGENT.

(Reproduced Record at 15.)

It is not clear to this Court that the written agreement meets the requirements establishing an agency relationship. Rather, the agreement appears to be precisely what it is labeled, a power-of-attorney agreement authorizing Khan to act

6

in Licensee's stead with respect only to the "license & inspection department and health department," presumably of the City of Philadelphia. *Id*. Notably absent from the agreement is any language authorizing Khan to act in Licensee's stead in the day-to-day or fiscal operations of the cart. Critically, the agreement does not grant Licensee the necessary control over Khan sufficient to constitute a valid agency agreement.

As noted above, the hallmark of a principal-agency relationship is control. Here, there is no language in the agreement or evidence in the record that Licensee controlled or managed Khan, or directed Khan on behalf of the business; neither Khan nor Licensee testified that Licensee exercised any control over Khan. Moreover, the agreement does not authorize Khan to act as Licensee's agent in regard to the cart's day-to-day operations and there is nothing in the agreement indicating that Licensee retains any control over Khan and/or the business. Indeed, Licensee did not pay Khan for his services; rather, the record indicates that Khan receives approximately ninety to ninety-five percent of the cart's profits, that he pays the cart's employees, and that he pays Licensee approximately five to six percent of the cart's profits each month without providing any written records. Similarly, the record indicates that Khan possesses a business privilege license and purchases all of the food for the cart. Moreover, Khan testified that he pays the fees for the Vending License and uses his own address for annual license renewal. Because these facts constitute substantial evidence to support the Board's finding that Khan was acting on his own behalf and not on behalf of Licensee with respect to the Vending License, Licensee's argument that Khan was acting as his agent is unpersuasive.

Nevertheless, Licensee argues that the Board erred in failing to sufficiently consider the power of attorney agreement. However, as articulated

7

above, the power of attorney agreement is insufficient to create an agency agreement. Further, the Board expressly found that Khan was not Licensee's employee, Khan was not Licensee's independent contractor, Khan was acting on his own behalf with respect to the Vending License, and Licensee transferred the Vending License to Khan. Because these findings are supported by substantial evidence, this Court is precluded from revisiting the same.

Our determination is underscored by this Court's recent decision in *Ziemlewicz v. Board of License and Inspection Review* (Pa. Cmwlth., No. 1088 C.D. 2015, filed March 3, 2016), where we addressed an issue nearly identical to that presented in the instant matter.[1] In *Ziemlewicz*, the Board affirmed the revocation of a licensee's vending license to operate a food cart because it determined that he improperly transferred or assigned his license to a third party (Ali). The licensee appealed the revocation to the trial court, which affirmed the Board. The licensee appealed to this Court, arguing, *inter alia*, that he did not transfer or assign control of the cart because Ali was acting as his agent.

On appeal, we noted:

Black's Law Dictionary defines "assign" as "to convey; to transfer rights or property." BLACK'S LAW DICTIONARY 135 (9th ed. 2009). "Transfer" is defined as "1. [t]o convey or removed from one place or one person to another; to pass or hand over from one to another, esp[ecially] to change over the possession or control of. 2. [t]o sell or give." *Id.* at 1636, [*Love v. City of Philadelphia*,] 543 A.2d 531 [(Pa. 1988)]. Both definitions include the phrase "to convey" which means "to transfer or deliver (something, such as a right or property) to another, esp[ecially] by deed or other writing; *esp[ecially] to perform an act that is intended to*

[1] Pursuant to §414 of this Court's Internal Operating Procedures, this unreported decision is not precedential and is only cited for its persuasive value.

> *create one or more property interests, regardless of whether the act is actually effective to create those interests."* *Id.* at 383, 543 A.2d 531 (emphasis added). Accordingly, a party's action may show a transfer despite the lack of actual authority to effectuate a legal transfer.

*Id.* at 4.

This Court further noted that the record contained no writing expressing a principal-agent relationship; therefore, the licensee relied on a common-law agency theory. We reasoned that Ali had apparent control over the business because he managed and operated the business on a daily basis and the record contained no evidence that the licensee managed or exercised control over Ali. We further reasoned that Ali had ultimate financial responsibility for the business because he received the revenue, paid expenses, and kept the profits. We also noted that Ali maintained the relevant licenses and inspections required for compliance with the city's ordinance; he possessed a commissary license in his name and renewed the license using his own check. We further stated that L&I had no record of the licensee operating the cart or being present for an inspection since 2006. Accordingly, we determined that the licensee, in effect, transferred his licensee to Ali and reasoned that public policy favored the result because our holding allowed the City of Philadelphia to enforce its system of oversight and accountability underlying the licensure process.

Here, similar to the analysis in *Ziemlewicz* regarding a common law theory of agency, we conclude that the proffered power of attorney agreement did not constitute an agency agreement for purposes of the Vending License. Moreover, the record contains facts strikingly similar to those presented in *Ziemlewicz* regarding the lack of an agency relationship and the transfer of the license: Khan used his own address for Licensee's city tax account and paid the relevant taxes on the account;

Khan paid the fees for the Vending License and used his own address for license renewals; Khan held a business privilege license; Licensee did not possess a commissary license; Khan handled all of the affairs regarding the vending cart, without any day-to-day oversight by Licensee; and Khan had ultimate financial responsibility for the business. These facts constitute substantial evidence sufficient to support the Board's finding that Licensee, in effect, transferred or assigned the Vending License to Khan because Khan operated the business and reaped the benefits of the same. As in *Ziemlewicz*, these facts establish Licensee, in effect, transferred or assigned the Vending License.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stavros Zafiratos,                           :
                    Appellant               :
                                            :    No.  121 C.D. 2016
          v.                                :
                                            :
Board of License and Inspection            :
Review                                      :

## ***ORDER***

AND NOW, this 22nd day of March, 2017, the December 17, 2015 order of the Court of Common Pleas of Philadelphia County is affirmed.  The City of Philadelphia Board of License and Inspection Review's application for leave to file a sur-reply is denied.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stavros Zafiratos,              :
          Appellant      :
                           :
          v.            : No. 121 C.D. 2016
                           : Submitted: January 6, 2017
Board of License and Inspection :
Review                     :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: March 22, 2017**

I respectfully dissent from the majority's conclusions. The evidence in this case establishes only that an agency relationship was created through the action of the parties, as well as the power of attorney. A valid transfer must be irrevocable.

While the business relationship here is unusual, there is no evidence of licensee's intent to permanently divest his control of this business and/or ownership.


                                      **JAMES GARDNER COLINS, Senior Judge**