Michael TSOKAS, Appellant,

v.

### BOARD OF LICENSES AND INSPECTIONS REVIEW.

Commonwealth Court of Pennsylvania.

Argued March 6, 2001.

Decided May 29, 2001.

34   Pa.Code § 131.112(a) (emphasis added).

Aaron Pogach, Philadelphia, for appellant.

Lewis Rosman, Philadelphia, for appellee.

Before SMITH, J., PELLEGRINI, J., and JIULIANTE, Senior Judge.

SMITH, Judge.

Michael Tsokas (Appellant) appeals from the order of the Court of Common Pleas of Philadelphia County that affirmed the decision of the Board of Licenses and Inspections Review (Board), which upheld the revocation of Appellant's firearms permit by the City of Philadelphia Police Commissioner (City). The City revoked the license in accordance with Section 6109 of the Pennsylvania Uniform Firearms Act of 1995 (Uniform Firearms Act), *as amended,* 18 Pa.C.S. § 6109, because of an "active protective order" lodged against Appellant for one year pursuant to a private criminal complaint filed against him. Appellant contends that the trial court erred (a) in failing to reinstate his license once the private criminal complaint was dismissed and he was found not guilty, (b) in determining that Appellant is an individual of bad reputation and character and would be a danger to public safety and (c) in improperly considering evidence which was tainted and created by the private criminal complainant who did not appear in court to testify.

Appellant is a 70–year old dentist who resides in Philadelphia and maintains a dental practice near Temple University. The City revoked Appellant's license to carry a firearm on April 13, 1998 pursuant to the City's investigation of Appellant's application for a renewal of his license. The investigation disclosed the outstanding protective order related to harassment and terroristic threats charges lodged against Appellant in a private criminal complaint filed by Ali Joobeen. The revocation notice also indicated that a renewal of Appellant's license would be disapproved due to the order. The criminal charges were subsequently dismissed by the court of common pleas on June 16, 1999.

Appellant appealed from the revocation notice to the Board, which held a hearing on August 10, 1999 and thereafter affirmed the revocation by notice dated August 25, 1999. The notice indicated that the Board's decision was based on testimony that it received on August 10. Appellant

timely appealed to the trial court, which conducted a de novo review. The trial court held hearings in December 1999 and March 2000, and, with the agreement of counsel, it made findings of fact and conclusions of law based upon a transcript of testimony presented before the Board along with the testimony presented before the court at its two hearings.

The trial court made the following findings of fact:

1. On or about March 24, 1995, John Johnson and his crew member were delivering circulars in the vicinity of appellant's neighborhood, near the 3300 block of Park Avenue, Philadelphia, Pennsylvania. A verbal altercation ensued, and in the presence of Mr. Johnson, appellant threatened to kill the crew member.

2. During the same incident, appellant threatened to shoot Mr. Johnson. Appellant pulled back his overcoat and suit and inched up the gun which he had on his person. Mr. Johnson then walked away and flagged down a police officer who was traveling by, Officer Vaird, who then called for back up assistance.

3. Officer Sharon Brambrinck, who responded to Officer Vaird's call for assistance, spoke to appellant. While speaking to her, appellant thrice denied having a weapon on his person. Officer Brambrinck pat[ted] down the appellant and found a gun matching the description of the weapon which Mr. Johnson had seen when appellant pulled back his overcoat and suit. Appellant did not mention that he had a permit for the gun, a fact which was discovered by Officer Brambrinck only after she took appellant to headquarters and placed him in a holding cell.

4. In another incident, which took place on July 25, 1996, three males, between six to ten years of age, were playing with the water being released from a fire hydrant near a church, owned by appellant, located in the vicinity of 3200 block of Park Avenue, Philadelphia, Pennsylvania. Appellant then pulled his coat jacket back and exposed to the youths his side, to which was affixed the gun he had on his person.

5. On that occasion, Officer Joseph Penderghest, a Temple University police officer, took down Incident Report DC 9625B, 06751.

6. On or about the time of this incident, appellant stated to Officer Penderghest that if the Temple Police ever pulled their guns out at him, he would shoot the Temple Police. This statement was noted in the incident report.

7. At a deposition, taken September 11, 1996, portions of which were read to the Review Board, appellant testified concerning an incident wherein he pulled his gun from his belt in response to passing two black individuals while walking. Appellant testified that these individuals let him pass through between the two of them, and that while doing so he was holding his gun, while the individuals observed it in his hand.

8. Additional testimony revealed that appellant also testified to pulling out his gun on an individual whom he perceived to be breaking into one of his properties with a screwdriver, telling the individual that if 'he doesn't leave, I'll blow your brains out.'

9. Appellant's firearm permit was revoked as of April 13, 1998, by way of order from the Philadelphia Police

Department. An active protective order, CR 97–11–03–9514, entered March 12, 1998, was cause for the revocation order, along with the private criminal complaint filed by Ali Joobeen which alleged that appellant threatened Mr. Joobeen with the statement 'Moslem punk, get out of the neighborhood or I'll have you killed.'

10. Subsequently, at a deposition taken on June 25, 1998, appellant testified concerning his dispute with an individual who issues citations for trash violations. Appellant admitted stating that 'Mr. Smith has given me cancer. He has given me thoughts. If I had a gun, I would shoot the guy. It crossed my mind, believe me.'

11. At the March 9, 2000, hearing conducted before this Court, a letter was introduced by the City, and allowed by this Court. This hand printed document, entitled 'To Whom It May Concern,' ends with the statement 'if you fail to stop harassing me at once' and then, printed beneath that are the words, 'fear death.' Appellant denied having written the letter instead alleging that the letter contains his writing transposed from other documents which he has written, all in a conspiracy against him by everyone else and the City. This Court finds this argument incredible and further finds that the document was, as admitted by appellant, written in appellant's words.

12. The record contains an envelope, unopened by this Court, to which a note is attached stating that the envelope contains copies of petitions of Temple students who oppose appellant having a firearm permit.

13. The record contains an affidavit of Carlos S. Rivera, dated August 8, 1999, a former employee of appellant. Mr. Rivera expresses objections to appellant having a firearm permit and carrying a weapon due to appellant's temper.

Trial court's opinion, at pp. 2—5 (citations and footnotes omitted).

■ The trial court concluded that the City properly revoked Appellant's firearms permit for good cause pursuant to Section 6109(e)(1) of the Uniform Firearms Act, 18 Pa.C.S. § 6109(e)(1), which provides in part that "[a] license shall not be issued to any of the following: (i) An individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." [1] The court concluded that the record depicted an individual whose character and reputation represent the kind of individual who would act, and already has acted, in a dangerous manner. The court illustrated in its findings the nature and extent of Appellant's threatening and dangerous behavior, and it noted Appellant's admission on the record that had he had a gun he would have shot a man involved in a dispute with Appellant concerning a trash violation citation.

Appellant argues, inter alia, that when he was found not guilty in June 1999 on the private criminal complaint filed by Mr. Joobeen, the protective order was dismissed, and his gun permit should have

---

1. The Court's review here is limited to determining whether the trial court abused its discretion, whether it committed an error of law or whether it violated Appellant's constitutional rights. *Harris v. Sheriff of Delaware County,* 675 A.2d 400 (Pa.Cmwlth.1996); *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406 (1988).

been reinstated.[2] The City's initial notice of revocation specified no grounds for the revocation other than the active protective order. Appellant also contends that the revocation notice bars his license renewal and is contrary to Section 6114 of the Uniform Firearms Act, *as amended,* 18 Pa.C.S. § 6114. That section provides in part that the action of a chief of police or sheriff shall be subject to judicial review in the manner and within the time provided by law and that a judgment sustaining a refusal to grant a license shall not bar, after one year, a new application for a license.

Appellant contends that the trial court improperly concluded that he is a person of bad character and reputation and that he represents a danger to public safety. He asserts various facts which militate against the trial court's conclusion: his educational background, profession, lack of criminal record, length of time licensed to carry a gun and never having fired the gun. He attempts to explain the evidence against him, which the trial court credited, stating that he voluntarily handed over his gun to the officer during her investigation of the March 1995 incident involving Mr. Johnson and that Mr. Johnson voluntarily withdrew his criminal complaint against Appellant. In addition, no violence or gun pointing occurred during the March 1995 or July 1996 incidents; and he merely held his gun when passing two men late one night with a screw driver attempting to break into one of his properties.

Appellant further complains that the trial court considered tainted evidence, which the court instead should have rejected. In particular Mr. Rivera's affidavit opposing the reinstatement of Appellant's license should not have been considered since Mr. Rivera was not present in court and could not be cross-examined. Moreover, Appellant could not cross-examine the alleged Temple University students who signed the petition which Appellant insisted was prepared by Mr. Joobeen. Appellant strenuously argues that the court should not have considered the student petition evidence because the information was not valid and another person transposed document contents. He notes his longstanding adversarial relationship with Mr. Joobeen, and he evidently believes that the trial court should have given some weight to this fact.

The Board responds that under Section 6109 of the Uniform Firearms Act, the City properly revoked Appellant's license for good cause. Furthermore, the Board may revoke a permit for any reason provided in Section 6109(e)(1) of the Act, and the Board was more than justified based upon Appellant's actions in determining that he represented a threat to public safety and should not be licensed to carry a gun in Philadelphia. The Board cites *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406 (1988), to support its contention that the City only needed to show Appellant's threatening and intimidating conduct to revoke his license. In *Gardner* the Court held that the sheriff was justified in denying a gun license to the appellant because he pulled a .357 Magnum from his holster during a controversy with a plumber working in his basement, waived the gun about and stated that "this is how he gets his work done." *Id.,* at p. 409.

---

**2.** Appellant briefly argues that he had a right to bear arms under the Pennsylvania Constitution, Article 1, § 21, and that this right was abridged by virtue of the City's revocation of his license, essentially without good cause.

Courts have clearly held that the right to bear arms may be restricted in the exercise of the police power, among other things, for the protection of the citizens. *Harris.*

■ Additionally, the Board contends that Appellant's apparent argument before this Court is that because the initial revocation notice referenced the protective order as the basis for revocation, he was not provided advance written notice of the specific reason for the revocation affirmed by the trial court. This argument fails, according to the Board, because Appellant neglected to preserve the notice issue for appellate review. At no time did Appellant state before the trial court that he had not received proper notice of the basis for the revocation proceedings, and as a result the trial court never addressed the issue. Appellant also waived any complaint regarding notice by failing to raise the issue in his Rule 1925(b) statement to the trial court, *see* Pa. R.A.P.1925(b), which mirrors the questions presented to the Court in this appeal.[3] *See Perin v. Board of Supervisors of Washington Township*, 128 Pa. Cmwlth. 313, 563 A.2d 576 (1989) (failure to raise issue below or in statement of matters complained of on appeal constitutes waiver of the issue). The Court agrees that the issue was not raised below and consequently is waived.

■ As to the merits the Court concludes that the trial court did not abuse its discretion nor otherwise commit an error of law in determining that Appellant's character and reputation demonstrate that he would likely act in a manner dangerous to public safety if he were permitted to continue to carry a firearm. Regarding Appellant's complaint that the trial court improperly considered tainted evidence, it should be noted that the court expressly stated in its findings that it left unopened the envelope containing petitions from students at Temple University. *See* Finding of Fact No. 13. Ostensibly, if the trial court did not review the petition evidence, it did not consider it. As for Mr. Rivera's affidavit, the Court agrees that the evidence should not have been considered, and to the extent that the trial court did consider it the trial court committed an error, albeit a harmless one in the face of the other overwhelming admissible evidence supporting the court's decision.

■ The Court stated in *Harris v. Sheriff of Delaware County*, 675 A.2d 400 (Pa.Cmwlth.1996), that even though the Uniform Firearms Act does not define good cause for purposes of revocation of a license issues under the Act, evidence of character and reputation are relevant to the issue of revocation. Clearly, the legislature intended to confer discretion upon police chiefs or sheriffs to determine whether an applicant should be licensed, and this principle applies with equal force to a determination of good cause for the revocation of a license granted under the Act. *Id.* When the evidence supports the conclusion that an individual licensed to carry a firearm does not possess the requisite character and reputation to do so, this Court must uphold the decision of a police chief or other proper official to revoke the license. Any suggestion by Appellant that the Board may not permanently revoke his license, or disapprove his application for a new license after one year, evinces a misinterpretation of the purposes of the Uniform Firearms Act. Based upon the fore-

---

**3.** The Board notes that Appellant's Counsel acknowledged before the Board that he understood the City's contention that it had good cause to deny or revoke Appellant's license based upon his propensity to act. It further argues that even if the notice issue were preserved below, Appellant cannot prevail on the issue because he received adequate notice by virtue of the Board's August 1999 revocation decision which indicated that it was based upon testimony from the August 10 hearing. That hearing dealt solely with Appellant's character and reputation, and the trial court conducted a de novo review of the case during which Appellant was fully prepared to respond.

going, the Court affirms the order of the trial court.

## ORDER

AND NOW, this 29th day of May, 2001, the Court hereby affirms the order of the Court of Common Pleas of Philadelphia County.